WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Hiatt, et al., | No. CV-20-02247-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, et al., | |
| Defendants. | |

Before the Court is Defendants United States of America and Dat P. Tran's (collectively, "Defendants") Motion to Dismiss (the "Motion") (Doc. 10). This Motion is fully briefed. (Docs. 11, 12.) The Court resolves the Motion as follows.[1]

**I.    BACKGROUND**

The following facts derive from the Complaint. (Doc. 1.) The named Plaintiffs are Thomas Hiatt, Adrian Holguin, James Schiele, and Daily Express, Inc. ("Daily Express") (collectively, "Plaintiffs"). (*Id.* ¶¶ 3–6.) Hiatt, Holguin, and Schiele are military veterans who were involved in separate motor vehicle collisions. (*Id.* ¶¶ 24, 27, 36.) Each of them suffered physical injuries requiring emergency medical care and treatment at a non-United States Department of Veterans Affairs ("VA") hospital. (*Id.*) The United States paid each hospital for their medical care and treatment. (*Id.* ¶¶ 26, 29–30, 38–39.) Later, Holguin and Schiele both pursued personal injury claims against the responsible drivers.

---

[1] Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

(*Id.* ¶¶ 31–33, 44–46.) They also asserted underinsured motorist claims against their auto-insurance carriers. (*Id.*) They eventually settled their personal injury and underinsured motorist claims for the available policy limits. (*Id.*)

Non-party James Marsh is also a veteran and was involved in a motor vehicle collision with a vehicle operated by Daily Express. (*Id.* ¶¶ 49, 55.) The VA alleges that it made a payment to the non-VA hospital that provided Marsh with emergency medical care and treatment. (*Id.* ¶ 51.) Marsh asserted personal injury claims against Daily Express. (*Id.* ¶ 55.) Daily Express settled with Marsh and issued him a payment. (*Id.* ¶ 56.) Because Daily Express alleged that Marsh was comparatively at fault for causing the collision, its payment to him "was not for his full claimed damages," but "was instead reduced under Arizona's comparative fault system." (*Id.* ¶ 57.)

The VA then asserted its rights under the Federal Medical Care Recovery Act ("FMCRA"), 42 U.S.C. §§ 2651–53, and 38 U.S.C. § 1729 to recover from the third parties—either the responsible tortfeasor or their insurer—the reasonable value of medical care provided or paid for by the government. Although the United States has a private right of action to litigate these claims against third parties, it has not yet initiated litigation. Instead, the VA provided notices to each injured veteran informing them of the VA's intention to pursue these claims against any responsible party. (*See* Docs. 11-1, 11-2, 11-3, 11-4.) Plaintiffs then commenced this action to preemptively restrain the United States from moving forward. (Doc. 1.) Plaintiffs admit that the VA is, or may be, "entitled to a lien" against any tort recovery or settlement obtained because of the motor vehicle collisions. (*Id.* ¶¶ 63–67.) Plaintiffs dispute, however, the "the proper amount of the VA's lien because the VA is asserting a lien in excess of the amount authorized" by statute. (*Id.*)

The Complaint includes one count for declaratory and injunctive relief, which alleges, among other things, that "the VA routinely asserts liens in excess" of the amount statutorily authorized, certain regulations exceed the "statutory authority granted to the Secretary [of VA] to promulgate regulations," and that "Federal law supports equitable

apportionment of a recovery subject to a VA lien." (*Id.* ¶¶ 68–69, 71, 78.) Defendants soon thereafter filed the instant Motion. (Doc. 10.)

## II.    LEGAL STANDARD

A party may move under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss claims in which the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) challenge may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a defendant argues that the claims in the complaint, even if true, are insufficient to establish subject-matter jurisdiction, the challenge is a facial one. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), courts must accept all material allegations in the complaint as true and construe the complaint in favor of the plaintiff. *White*, 227 F.3d at 1242; *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). By contrast, in a factual attack to subject-matter jurisdiction, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. Courts may look beyond the complaint only when a defendant brings a factual attack against jurisdiction. *White*, 227 F.3d at 1242. Further, when evaluating a Rule 12(b)(1) motion, the plaintiff bears "the burden of proof that jurisdiction does in fact exist." *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).[2] Dismissal under Rule

---

[2] "Claims raised under Rule 12(b)(1) should be addressed before other reasons for dismissal filed under Rule 12(b)(6)." *Felix v. Pic–N–Run, Inc.*, No. CV 09-8015-PCT-JAT, 2010 WL 1856347, *2 (D. Ariz. May 4, 2010) (citing Wright & Miller, Federal Practice and Procedure, § 1350 at 209–10 ("[W]hen the motion is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.")).

- 3 -

12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

As a threshold matter, Defendants argue that Plaintiffs' Complaint fails to allege (1) a valid basis for subject-matter jurisdiction; and (2) that the United States has waived its sovereign immunity in these particular circumstances. (Doc. 10 at 9–10.) Generally speaking, the United States enjoys sovereign immunity; it cannot be sued without its consent and such consent is a prerequisite for jurisdiction. *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006). Plaintiffs have the "burden of pointing to . . . an unequivocal waiver of [sovereign] immunity." *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992) (citation omitted).

The Complaint alleges that subject-matter jurisdiction "for this action arises under 28 U.S.C. § 1346(a)(2)." (Doc. 1 ¶ 1.) Section 1346(a)(2), known as the Little Tucker Act (the "Act"), constitutes a limited waiver of the government's sovereign immunity. It also provides the United States District Courts concurrent jurisdiction with the United States Court of Federal Claims over any non-tort civil action or claim against the United States seeking damages not exceeding $10,000. 28 U.S.C. § 1346(a)(2). The Act creates a "presumption of exclusive jurisdiction in the Court of Federal Claims, but that presumption can be overcome by an independent statutory grant of jurisdiction to another court." *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1137 (9th Cir. 2013). Importantly here, "the Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States." *Richardson v. Morris*, 409 U.S. 464, 465 (1973).

Plaintiffs here do not seek money damages. (*See* Doc. 1.) The sole cause of action seeks declaratory and injunctive relief. (*Id.*) The Court, therefore, finds that the Act does not waive Defendants' sovereign immunity or provide this Court with subject-matter

jurisdiction. *See Santucci v. U.S. State Dep't*, No. CV-04-2499-PHX-SRB, 2005 WL 3113173, at *4 (D. Ariz. Nov. 21, 2005) ("The Act provides jurisdiction over awards of damages but not equitable relief such as injunctive or declaratory relief or mandamus.").[3]

Perhaps recognizing that § 1346(a)(2) does not establish subject-matter jurisdiction, Plaintiffs, for the first time in their response, contend that subject-matter jurisdiction exists through the Administrative Procedure Act ("APA"). (Doc. 11 at 9–11.) Plaintiffs admit that the APA was "not specifically cited in the Complaint," but argue that "notice pleading requirements do not require a plaintiff to identify the 'statutory or constitutional source of the claim raised in order to survive a motion to dismiss.'" (*Id.* at 9 n.3 (citing *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008)).) Defendants contend that *Alvarez* is inapposite. (Doc. 12 at 4.)

In *Alvarez*, a pro se plaintiff brought religious exercise claims under the First Amendment. 518 F.3d at 1154–55. After the government moved for summary judgment, the plaintiff clarified, for the first time in his response, that he intended to sue under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id.* at 1155. The district court rejected that argument and declined to apply RLUIPA's more plaintiff-friendly standards. *Id.* at 1155–56. The Ninth Circuit reversed, finding that the pro se plaintiff did not need to plead each statute or legal theory he intended to pursue. *Id.* at 1158. The panel held that RLUIPA's relatedness to a First Amendment claim established that the defendants "had fair notice that a statutory religious exercise claim also was being presented to the district court." *Id.*

The Court agrees with Defendants that *Alvarez* does not apply to the facts here. First, Plaintiffs are not pro se. Second, litigants must still "provide the defendant fair notice of the provision under which relief is sought." *Walker v. Beard*, 789 F.3d 1125,

---

[3] The Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, does not, by itself, waive the United States' sovereign immunity nor provide subject-matter jurisdiction. *See Safeco Ins. Co. of Am. v. Nelson*, 468 F. Supp. 3d 1291, 1297 (S.D. Cal. 2020) ("The Declaratory Judgment Act is neither a waiver of sovereign immunity nor an independent grant of jurisdiction."); *see also Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005) ("[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction . . . .").

1133 (9th Cir. 2015). As Defendants note, had they been on notice of such jurisdictional arguments, their Motion "would have been different in significant respects." (*Id.* at 4 n.2.) Nothing in the Complaint gives notice to Defendants that they would need to move to dismiss claims under the APA. Other courts have concluded that dismissal is appropriate in similar contexts where a plaintiff raises an APA claim for the first time in their responsive brief. *See, e.g.*, *Berdeaux v. U.S. Dep't of Educ. Loan Discharge Unit, San Francisco CA*, No. CV 10-1737-PHX-JAT, 2011 WL 3876001, at *9 (D. Ariz. Sept. 2, 2011) ("Plaintiff's failure to include an APA claim in the Complaint (or even a citation to the APA) bars Plaintiff from relying on the APA as a basis of jurisdiction."). The Court therefore finds that Plaintiffs have not adequately pleaded the APA as a basis of jurisdiction.

Plaintiffs also, for the first time in their response, allege that subject-matter jurisdiction exists by way of the coercive action doctrine. (Doc. 11 at 7–9.) When a plaintiff seeking declaratory relief "asserts a claim that is in the nature of a defense to a threatened or pending action, the character of the threatened or pending action determines whether federal question jurisdiction exists with regard to the declaratory judgment action." *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986). When determining declaratory judgment jurisdiction, "federal courts . . . often look to the 'character of the threatened action.'" *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) (citation omitted). Therefore, if the "*declaratory judgment defendant* could have brough a coercive action in federal court to enforce its rights, jurisdiction exists for declaratory relief." *Levin Metals*, 799 F.2d at 1315 (quoting *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985)) (emphasis in original).

Although Plaintiffs are correct that the coercive action doctrine can, in some cases, provide subject-matter jurisdiction, the Court is not persuaded that the Complaint sufficiently alleges such a basis for jurisdiction. The parties do not dispute that Defendants have a potential coercive action against Daily Express under the FMCRA.

(*See* Doc. 11 at 8 n.2; Doc. 12 at 11.) The FMCRA provides Defendants a right to recover from third-party tortfeasors, like Daily Express. 42 U.S.C. §§ 2651–53. That statutory scheme is distinct from the substantive statutes—38 U.S.C. §§ 1725 and 1729— that Plaintiffs contend their claim arises under.[4] (*See* Doc. 1 ¶ 1.) The Complaint, however, does not mention the FMCRA. Without an allegation that Defendants could pursue a coercive action against Daily Express under the FMCRA, that argument cannot establish subject-matter jurisdiction.

As to the individual Plaintiffs, the parties also agree that "Hiatt, Holguin, and Schiele could not be directly sued." (*See* Doc. 11 at 8 n.2; Doc. 12 at 10.) Plaintiffs argue that, because those three individuals "would be joined . . . as indispensable parties" in any potential coercive action by the United States against a third party, they too have subject-matter jurisdiction under the coercive action doctrine. (Doc. 11 at 7–9.) As Defendants note, Plaintiffs do not provide any authority to support this broad reading of that doctrine. To the contrary, other courts hold that only an action between the declaratory judgment defendant and plaintiff, not a third party, can be considered. *See, e.g.*, *Merced Irrigation Dist. v. Cnty. of Mariposa*, 941 F. Supp. 2d 1237, 1265 (E.D. Cal. 2013). Without more facts or a different basis to support this claim, the individual Plaintiffs cannot sustain an action under the coercive action doctrine.

Plaintiffs, at this point, have not alleged subject-matter jurisdiction.[5] As explained later in this Order, Plaintiffs will get an opportunity to cure these jurisdictional

---

[4] Sections 1725 and 1729's text is clear that neither statute authorizes a private party to bring a civil action against the United States. *See* 38 U.S.C. §§ 1725 and 1729. Plaintiffs therefore cannot establish subject-matter jurisdiction through these statutes unless they can show the coercive action doctrine applies. To the extent that Plaintiffs attempt to use §§ 1725 and 1729 to do that, they have not developed that theory in the Complaint. At least as to the individual Plaintiffs' claims, it is unclear whether there is standing to pursue such an action considering the facts as they appear in the Complaint. *See Grant v. United States*, No. 2:11-CV-00360 LKK KJN, 2012 WL 5289309, at *10–11 (E.D. Cal. Oct. 23, 2012).

[5] Plaintiffs' response also, for the first time, alleges that Defendants could bring an action against them under the False Claims Act, 31 U.S.C. §§ 3729–33, through 38 U.S.C. § 1730(a). (Doc. 11 at 5–6, 8.) The Court need not consider this argument because it does not appear in the Complaint, and there is nothing to suggest that Defendants were on notice of this legal theory. Even if the Court considered that argument, it agrees with Defendants that it is unclear how § 1730(a) gives them a right to bring a civil action against Plaintiffs. (*See* Doc. 12 at 10 n.7.)

deficiencies with an amended complaint.

### B. Jurisdiction to Review VA Rules and Regulations

The Secretary of VA is required to "prescribe regulations for the purpose of determining reasonable charges for care or services under [38 U.S.C. § 1729(a)(1)]." 38 U.S.C. § 1729(c)(2)(A). Accordingly, the Secretary of VA promulgated the rate-setting framework described in 38 C.F.R § 17.101. *See* 38 C.F.R. § 17.101; 68 Fed. Reg. 56876-01, 2003 WL 22246882 (Oct. 2, 2003); 68 Fed. Reg. 70714-01, 2003 WL 22970785 (Dec. 19, 2003). That regulation provides, "[w]hen medical care or services are furnished at the expense of the VA by non-VA providers, the charges billed for such care or services will be the higher of the charges determined according to this section, or the amount VA paid to the non-VA provider." 38 C.F.R. § 17.101(a)(7). Plaintiffs challenge that rate-setting formula, which governs how much the VA can recover from third parties in certain circumstances, as "ultra vires" and "unenforceable." (Doc. 1 ¶¶ 97–98.) Defendants contend that this Court lacks jurisdiction to consider this challenge. (Doc. 10 at 12–13.)

The Court finds Defendants' argument persuasive. The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction to review challenges to most actions by the Secretary. *See* 38 U.S.C. § 502. In particular, § 502 "applies to (1) actions that require publication in the Federal Register, such as rules of procedure, substantive rules of general applicability, statements of general policy, and amendments, revisions, or repeals to those actions, under 5 U.S.C. § 552(a)(1); and (2) agency rulemaking, under 5 U.S.C. § 553." *Preminger v. Principi*, 422 F.3d 815, 821 (9th Cir. 2005). The VA regulation at issue here, 38 C.F.R. § 17.101, was promulgated as an amendment to already existing regulations, and it was published in the Federal Register as required by 5 U.S.C. § 552(a)(1). *See* 68 Fed. Reg. 70714-01, 2003 WL 22970785 (Dec. 19, 2003). Plaintiffs' challenge to the rate-setting formula must therefore be brought in the Federal Circuit. *See Preminger*, 422 F.3d at 821. This claim will be dismissed without prejudice and may be refiled where jurisdiction exists in the Federal Circuit.

### C. Failure to State a Claim

Defendants argue that 38 U.S.C. § 1725 does not apply in the "context articulated by Plaintiffs' allegations." (Doc. 10 at 17.) Given Plaintiffs have not alleged an adequate basis for subject-matter jurisdiction in their Complaint, the Court need not address the Rule 12(b)(6) portion of Defendants. *See Felix v. Pic–N–Run, Inc.*, No. CV 09-8015-PCT-JAT, 2010 WL 1856347, at *2 (D. Ariz. May 4, 2010). The Court therefore denies Defendants' Rule 12(b)(6) motion (Part of Doc. 10) as moot.

### D. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The power to grant leave to amend . . . is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quotation omitted). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). District courts properly deny leave to amend if the proposed amendment would be futile or the amended complaint would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

As mentioned above, Plaintiffs have, for the first time in their response, raised new theories to establish subject-matter jurisdiction. Plaintiffs may file an amended complaint to include their new jurisdictional theories under the APA and coercive action doctrine. If Plaintiffs choose to do so, they must identify the specific statutes that would provide jurisdiction under the coercive action doctrine. Plaintiffs cannot reallege their claim seeking to challenge the rate-setting formula in 38 C.F.R. § 17.101(a)(7) because it is "absolutely clear" that the deficiency cannot be cured by amendment. *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (citation omitted). That challenge may be refiled in the Federal Circuit. The Court will therefore allow Plaintiffs leave to amend to cure the jurisdictional deficiencies outlined in this Order.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Part of Doc. 10) with leave to amend. Plaintiffs shall file an amended complaint curing the jurisdictional deficiencies mentioned above no later than July 1, 2021. Plaintiffs' failure to timely file an amended complaint could result in dismissal of this case.

**IT IS FURTHER ORDERED denying** Defendants' Motion to Dismiss for Failure to State a Claim (Part of Doc. 10) as moot.

Dated this 16th day of June, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge